UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM T. DIVANE, JR. et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 14-cv-636 |
| v. | ) | |
| | ) | Judge John W. Darrah |
| PALDO SIGN AND DISPLAY COMPANY | ) | |
| and PALDO REAL ESTATE LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, William Divane, et al., as the Electrical Insurance Trustees (collectively, "the

Fund"), filed suit against Defendant Paldo Sign and Display Company ("Paldo") in the Northern

District of Illinois on January 29, 2014. In Plaintiffs' Second Amended Complaint, filed on

August 2, 2014, Plaintiffs allege a claim to collect withdrawal liability payments from

Defendants Paldo and Paldo Real Estate, LLC, pursuant to the Labor-Management Relations Act

and the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the

Multiemployer Pension Plan Amendment Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 *et seq.*

Plaintiffs now move for an entry of summary judgment against Defendants pursuant to Federal

Rule of Civil Procedure 56. Fed. R. Civ. P. 56. For the following reasons, Plaintiffs' Motion for

Summary Judgment is denied.

## BACKGROUND

The following facts are taken from the parties' statements of material facts submitted

in accordance with Local Rule 56.1.

Plaintiffs are Trustees of the Electrical Contractors Association of the City of Chicago and Local Union 134, I.B.E.W. Joint Pension Trust of Chicago.  (Pls' SOF ¶ 3.)  Defendant Paldo is an Illinois corporation, owned together by Madeline Paldo, Joseph Paldo, and John Paldo.  (*Id.* ¶ 5.)  Paldo Real Estate is a limited liability company incorporated in Illinois, and also owned by Madeline Paldo, Joseph Paldo, and John Paldo.  (*Id.* ¶ 6.)  Under its collective bargaining agreement, Paldo agreed to make payments to the Fund to cover certain fringe benefits pursuant to the Electrical Contractors Association of Chicago of the City of Chicago and Local Union 134, I.B.E.W. Joint Pension Trust of Chicago Pension Plan No. 4.  (*Id.* ¶ 7.)

On July 1, 2012, Paldo withdrew from the pension plan, and on February 20, 2013, the Fund sent Paldo notice that it owed withdrawal liability payments which totaled $170,900.00. (*Id.* ¶ 8.)  The Fund requested payments to be made in quarterly installments of $7,755 each, beginning on April 22, 2013.  (*Id.*)  Paldo has not made any payments to date.  (*Id.* ¶¶ 9-10.) Instead, on May 15, 2013, Paldo submitted a request for review to the Fund regarding the withdrawal liability demand.  (Defs' SOF ¶ 1.)  Plaintiffs responded to this request on May 30, 2013, affirming the amount of withdrawal liability due.  (*Id.* ¶ 2.)

Paldo's counsel then sought to initiate arbitration regarding the withdrawal liability amount and requested the Fund's arbitration procedures from Plaintiffs' counsel, Thomas Vasiljevich, on June 26, 2013.  (*Id.* ¶ 3.)  On July 1, 2013, Vasiljevich replied that "the arbitration procedures used by the Fund are contained in the Pension Benefit Guaranty Corporation ("PBGC") regulations covering the same."  (*Id.*)  Pursuant to this instruction, Paldo issued a demand for arbitration to the Fund, enclosing a copy of their request for review on July 25, 2013.  (*Id.* ¶ 5.)  Paldo and Vasiljevich began to discuss selection of an arbitrator.  (*Id.*) On August 9, 2013, Vasiljevich advised Paldo that he was mistaken as to the arbitration

procedures used by the Fund and that the Trustees adopted the American Arbitration Association ("AAA") procedures in 2001. (*Id.* ¶ 6.) Over the next few months, the parties attempted to resolve their issues short of arbitration. (*Id.*)

On November 12, 2013, Vasiljevich advised Paldo that they would need to perfect their arbitration request in accordance with the AAA procedures before November 18, 2013. (*Id.* ¶ 8.) On November 27, 2013, Paldo sent a demand for arbitration to the AAA with a filing fee of $975. (*Id.* ¶ 10.) The Fund contested this demand, arguing that Paldo paid the incorrect filing fee pursuant to the 2013 AAA filing fee schedule. The issue of whether Paldo perfected its arbitration request was then submitted to an arbitrator assigned by the AAA. (*Id.* ¶¶ 11-12.) Paldo objected to the arbitrator reviewing any issues aside from whether the request before the AAA was perfected. (*Id.* ¶¶ 12-14.) On March 25, 2014, the arbitrator, Malcolm Pritzker, found that Paldo's request for arbitration was not perfected because Paldo paid the incorrect filing fee. (Kranz Aff., Ex. C, p. 5.) On June 4, 2014, the Fund sent a notice of delinquency and demand for payment to Paldo. (Pls' SOF ¶ 13.)

## LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of establishing that there is no genuine issue of material fact and must inform the district court of the basis of its motion and identify the documents "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). All reasonable

inferences are drawn in the light most favorable to the nonmoving party. *Herzog v. Graphic Packaging Intern., Inc.*, 742 F.3d 802, 805 (7th Cir. 2014).

## LOCAL RULE 56.1

Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the party contends there is no genuine issue for trial." *Ammons v. Aramark Uniform Servs.*, 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." *Id.* Local Rule 56.1(b)(3)(C) permits the nonmovant to submit "any additional facts that require the denial of summary judgment . . . ." To overcome summary judgment, "the nonmoving party must file a response to each numbered paragraph in the moving party's statement." *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). In the case of any disagreement, the nonmoving party must reference affidavits, parts of the record, and other materials that support his stance. *Id.* A nonmovant's "mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). If the nonmovant's response only provides extraneous or argumentative information, the response will fail to constitute a proper denial of the fact, and the fact will be admitted. *See Graziano v. Vill. of Oak Park*, 401 F. Supp. 2d 918, 936 (N.D. Ill. 2005).

Legal conclusions or otherwise unsupported statements, including those that rely upon inadmissible hearsay, will be disregarded. *See First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985); *see also Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). If the responding party fails to comply with Rule 56.1, its "additional facts may be ignored, and the properly supported facts asserted in the

moving party's submission are deemed admitted." *Gbur v. City of Harvey, Illinois*, 835 F. Supp. 2d 600, 666 (N.D. Ill. 2011). Substantial compliance is not enough; parties must strictly comply with the rule. *See Ammons*, 368 F.3d at 817.

## ANALYSIS

The Fund is a multiemployer pension plan within the meaning of ERISA. 29 U.S.C. § 1002(37); 29 U.S.C. § 1301(3). William T. Divane, et al, as the Electrical Insurance Trustees, are parties in interest pursuant to ERISA, 29 U.S.C. § 1002(14)(A), and as such are collectively a plan sponsor under ERISA. 29 U.S.C. § 1002(16)(B)(iii); 29 U.S.C. § 1301(10)(A). Paldo and Paldo Real Estate are treated as one employer, as they are in "common control" for the purposes of the statute, a fact which Paldo does not dispute. 29 U.S.C. § 1301(b); 29 C.F.R. § 4001.2. The relevant withdrawal liability provision of the statute states that "[i]f an employer withdraws from a multiemployer plan in a complete withdrawal, then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability." 29 U.S.C. § 1381(a).

When an employer withdraws from the plan, the pension fund must assess the amount of withdrawal liability owed by the employer, and send a notice to that employer demanding payment. 29 U.S.C. § 1382; § 1391. Within ninety days of receiving the notice, the employer may then dispute the liability amount by requesting a review by the plan and setting forth the reasons for the dispute. § 1399(b)(2)(A). The plan must then review the request and notify the employer about the decision, its basis, and the reason for any changes. § 1399(b)(2)(B). If the employer is still dissatisfied with the determination, they may resolve the dispute through arbitration, which "shall be conducted in accordance with fair and equitable procedures to be promulgated by the corporation." § 1401(a)(2). The employer must initiate arbitration within 60 days after the earlier of (a) the date it is notified of the decision by the plan, or (b) 120 days after

5

the date the employer requests a review. § 1401(a)(1). If no arbitration proceeding is initiated as described, then the amount demanded is considered due and owing by the employer. §1401(b)(1). The MPPAA requires an employer to arbitrate any challenges to its withdrawal liability. *Banner Industries, Inc. v. Cent. States, Se. & Sw. Area Pension Fund*, 875 F.2d 1285, 1293 (7th Cir. 1989). By failing to arbitrate, an employer waives its defenses to withdrawal liability. *Robbins v. Admiral Merchants Motor Freight, Inc.*, 846 F.2d 1054, 1057 (7th Cir. 1988).

Plaintiffs argue that Paldo did not initiate arbitration in accordance with the Trustees' adopted procedures, and thus summary judgment is appropriate. The basis for this argument is the contention that Paldo did not perfect their request for arbitration because they did not pay the requisite filing fee in accordance with the 2013 AAA filing fee schedule. Plaintiffs argue that the PBGC expected that the filing fee would change over time, and as such, the language of prior approvals suggests that PBGC-approval of amendments to AAA arbitration procedures is not required. Plaintiffs also contend that because the AAA arbitrator already decided the filing fee issue, it cannot be raised again and litigated in this proceeding.

Paldo argues that the PBGC procedures govern arbitration in this case, or in the alternative, if the AAA procedures govern, that the 2013 AAA fee schedule was not properly approved as an "alternative procedure" by the PBGC and is not legally binding. 29 C.F.R. § 4221.14. Paldo also argues that Plaintiffs waived their right to use AAA procedures when their counsel erroneously stated that the PBGC default procedures applied. Finally, Paldo argues that even under the 2013 AAA fee schedule, their request for arbitration was timely, as they paid the appropriate fee according to the amount they contend their withdrawal liability should be.

*Whether the PBGC or AAA Arbitration Procedures Apply*

The first issue is whether the PBGC default procedures or the AAA procedures apply to the arbitration in this case. The PBGC has been designated to assign arbitration procedures to withdrawal liability disputes that arise under ERISA. *See* 29 U.S.C. § 1401(a)(2). The PBGC first proposed their own arbitration rules for withdrawal liability in 1983. Definitions; Arbitration of Disputes in Multiemployer Plans, 48 Fed. Reg. 31251-01 (proposed July 7, 1983) (to be codified at 29 C.F.R. pts. 2640 and 2641). In 1985, these rules were approved and noticed as final. Definitions; Arbitration of Disputes in Multiemployer Plans, 50 Fed. Reg. 34679-01 (Aug. 27, 1985) (to be codified at 29 C.F.R. pts. 2640 and 2641).

Along with establishing its own arbitration procedures, the PBGC also has the authority to approve alternative procedures that pension plans may adopt in lieu of the default PBGC regulations. In 1985, the PBGC "determined that the Multiemployer Pension Plan Arbitration Rules effective June 1, 1981, sponsored by the International Foundation of Employee Benefit Plans ("IFEBP") and administered by the American Arbitration Association will be substantially fair to all parties involved in the arbitration of a withdrawal liability dispute," and approved those rules under ERISA. Arbitration of Disputes in Multiemployer Plans; PBGC-Approved Arbitration Procedure, 50 Fed. Reg. 38046-03 (Sept. 19, 1985). The 1986 amendments to these procedures were also approved by the PBGC. Arbitration of Disputes in Multiemployer Plans; PBGC-Approved Arbitration Procedure, 51 Fed. Reg. 22585-01 (June 20, 1986).

The AAA procedures for withdrawal liability disputes provide the following procedure

for initiating arbitration:

> Section 7. Initiation of Arbitration
> Arbitrations under these Rules are initiated in the following manner:
>
> (a)(i) The initiating party gives notice to the other party of its intention to arbitrate
> (Demand) which notice shall set forth a brief description of the dispute and shall
> include the amount involved, and (ii) files at any Regional Office of the AAA two
> (2) copies of said notice, together with the appropriate administrative fee as
> provided in the Administrative Fee Schedule.

American Arbitration Association, Multiemployer Pension Plan Arbitration Rules for

Withdrawal Liability Disputes (rev. Feb. 1, 2013). While the AAA procedures require notice to

both the plan and the AAA, along with payment of the administrative filing fee, *id.*, the PBGC

procedures only require notice to the pension plan in order to initiate arbitration, 29 C.F.R.

§ 4221.3.

Paldo argues that Plaintiffs waived their ability to utilize AAA procedures because

Plaintiffs' counsel initially advised Paldo that the PBGC procedures were used by the Fund. The

plan sponsors of the pension plan from which an employer withdraws have the ability to utilize

PBGC procedures, or use a PBGC-approved procedure. 29 C.F.R § 4221.14(a). The Trustees of

the Fund unanimously adopted the AAA procedures for withdrawal liability disputes on

January 10, 2001. (Defs' SOF, Ex.C pp. 6-7.) Thus, the AAA procedures must govern this

dispute, and Paldo's argument that arbitration initiation under the PBGC is valid even if they did

not perfect their request before the AAA fails.

*Paldo's Affirmative Defense*

In response to Paldo's affirmative defense, Plaintiffs argue that Paldo cannot

participate in an arbitration proceeding and then raise a defense that goes to issues that were

submitted to the arbitrator, citing *Roughneck Concrete Drilling & Sawing Co. v.*

8

*Plumbers' Pension Fund, Local 130, UA (United Ass'n)*, 640 F.3d 761 (7th Cir. 2011).  The

Seventh Circuit did hold that "if a party voluntarily and unreservedly submits an issue to

arbitration, he cannot later argue that the arbitrator had no authority to resolve it." *Roughneck*

*Concrete Drilling & Sawing Co. v. Plumbers' Pension Fund, Local 130, UA (United Ass'n),* 640

F.3d 761, 766 (7th Cir. 2011) (quoting *Jones Dairy Farm v. Local No. P–1236, United Food &*

*Commercial Workers Int'l Union, AFL–CIO,* 760 F.2d 173, 175 (7th Cir.1985)).  However, Paldo

did not "voluntarily and unreservedly" submit to the arbitrator the issues of whether the Fund

waived any claim that AAA procedures were applicable, and whether Paldo was required to

follow AAA procedures to properly challenge its withdrawal liability. (Def's SOF ¶ 13.)  Absent

agreement by the parties on the issues submitted, the arbitrator framed the issue as follows:

"Did the Company's failure to pay the entire administrative fee based on the amount of the

Fund's demand for Employer Withdrawal Liability make the Company's initiation of arbitration

untimely?"  (Kranz Aff., Ex. C, p. 2.)  Regardless, as noted above, we find that the AAA

procedures were applicable and that Paldo was required to follow these procedures to timely

initiate arbitration.

*2013 AAA Fee Schedule*

The next issue is whether the fee schedule as amended by the AAA in 2013 is valid.

Paldo argues that because the PBGC did not publish a notice of approval in the Federal Register,

the fee schedule as it existed in 1986 must be applied.  This argument has been made before the

Seventh Circuit, however it has not yet ruled on this issue.  In the case before the Seventh

Circuit, the claim was resolved on the basis of the timeliness of notice to the AAA, rather than

whether the appropriate filing fee was paid.  *Cent. States, Se. & Sw. Area Pension Fund v.*

*Allega Concrete Corp.*, 772 F.3d 499, 501 (7th Cir. 2014).  The court did not resolve the issue of

9

the validity of the 2013 AAA fee schedule, stating that "[i]f Allega had sent a timely demand to the AAA, together with a check for $650, and the AAA had refused to proceed with arbitration, then we might have to decide whether an amendment of the fee schedule requires the PBGC's approval." *Id.* As the issue of whether the PBGC approved the amendments, or whether the amendments need to be approved by the PBGC at all, has never been resolved, this Court must look to previous PBGC approvals and AAA rules to decide this issue.

The PBGC published its approval of the AAA withdrawal liability arbitration procedures as they appeared in 1986 in the Federal Register. Arbitration of Disputes in Multiemployer Plans; PBGC-Approved Arbitration Procedure, 51 Fed. Reg. 22585-01 (June 20, 1986). This approval explicitly states that "the PBGC hereby approves the AAA/IFEBP Multiemployer Pension Plan Arbitration Rules, as revised effective September 1, 1986. This approval is effective June 20, 1986 and will remain effective until revoked by the PBGC through a Federal Register notice." *Id.* The AAA amended the filing fee schedule for the initiation of arbitration in withdrawal liability disputes in 2013. The PBGC has not published either an approval of this fee schedule, or a revocation of approval of the AAA procedures.

In 1986, the filing fee was $650 for amounts in dispute up to $1,000,000. (Defs' SOF, Ex. I p. 9.) The 1986 procedures also state that "[a]s a nonprofit organization, the AAA shall prescribe an Administrative Fee Schedule, a Refund Schedule and a Schedule of Other Service Charges to compensate it for the cost of providing administrative services. The schedule in effect at the time of filing, refunding or service shall be applicable." American Arbitration Association, Multiemployer Pension Plan Arbitration Rules for Withdrawal Liability Disputes (1986). This clause is particularly significant because it does not describe a hard, unchanging fee schedule that is to be applied to arbitrations in perpetuity. Rather, it specifies that the AAA has

10

the power to set the fee schedule, and the schedule *at the time of filing* is the one that is

applicable. *Id.* This language does not state that each schedule in effect at the time of filing

must be individually approved by the PBGC and published in the Federal Register.

Because the PBGC approved the fee schedule clause which allows the AAA to set the

amount of administrative fees, it is inferred that the PBGC had no expectation that the fee

schedule would or should remain the same for decades. It is reasonable that the AAA would

increase the filing fees (and tier the fees based on the amount in dispute) after twenty-three years.

As other courts in this district have noted, the 1986 PBGC-approved version and the 2013

version of the AAA withdrawal liability rules are "substantially similar," and as the language of

the 1986 PBGC-approved rules states that the fee schedule at the time of filing is applicable, this

Court finds that the 2013 AAA fee schedule does not require explicit approval by the PBGC and

is legally binding. *See, e.g.*, *Bulk Transport, Corp.*, 2015 WL 2415024, at *3 (N.D. Ill.

May 19, 2015).

*Whether Paldo Timely Initiated Arbitration*

Paldo also contends that under the 2013 fee schedule, they properly initiated

arbitration, as they paid an administrative fee that is appropriate for the withdrawal liability

amount they think is correct. This is the precise issue that was examined by the arbitrator, who

found that the incorrect filing fee was paid when Paldo determined its own amount of withdrawal

liability. (Krantz Aff., Ex. C. pp. 6-7.) It is clear from the statutory text that "*any determination

made by a plan sponsor* under sections 1381 through 1399 of this title and section 1405 of this

title *is presumed correct* unless the party contesting the determination shows by a preponderance

of the evidence that the determination was unreasonable or clearly erroneous." 29 U.S.C.

§ 1401(a)(3)(A). However, allowing an employer to pay an administrative filing fee according

to its own determination of the sum in dispute is a completely separate issue from allowing it to determine its own withdrawal liability. While the Seventh Circuit has held that the failure to pay the AAA filing fee renders an arbitration initiation untimely, it has yet to decide whether paying an incorrect filing fee has the same effect. *Robbins v. B and B Lines, Inc.*, 830 F.2d 648, 651 (7th Cir. 1987). Plaintiffs paid an administrative fee under the correct fee schedule but failed to pay the correct fee according to the amount of their calculated withdrawal liability. Whether this failure resulted in an untimely initiation of arbitration is a genuine issue of material fact, and summary judgment cannot be granted.

### CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment [26] is denied.


Date:      August 26, 2015

JOHN W. DARRAH
United States District Court Judge